UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
No. 1:19-cv-280-MOC

| | |
|---|---|
| MEGHAN MARIE NEIRA on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>GOODFELLAS PIZZA, INC. and AARON FOX,<br><br>Defendants. | ORDER |

**THIS MATTER** is before the Court on a Motion to Conditionally Certify a Collective Action and Facilitate Notice filed by Plaintiff Megan Marie Neira, individually and on behalf of all others similarly situated, under 29 U.S.C. § 216(b). (Doc. No. 10). Plaintiff seeks conditional certification of her Fair Labor Standard Act ("FLSA") claims and authorization to send court-supervised notice of this action pursuant to Section 216(b). Defendants oppose the motion. For the following reasons, the Court grants Plaintiff's motion in part.

I. BACKGROUND

A. Named Plaintiff and FLSA Opt-In Plaintiffs

Defendant Goodfellas Pizza, Inc. employed the Named Plaintiff Meghan Neira ("Named Plaintiff") as a delivery driver at one of their Domino's stores during the statutory period and as recently as June 2019. (Ex. C, Neira Decl. at ¶ 1). Additional early opt-in Plaintiff Mallory Mathis has joined this suit by filing a consent to join form pursuant to 29 U.S.C. § 216(b). (See e.g., Ex. D, Mathis Decl.). Mathis was employed by Defendants as a delivery driver at their

1

Domino's store based in Elgin, South Carolina, from approximately April 2019 to March 2020. (Id.).

### B. Relationship Between Defendants

Defendant Goodfella's Pizza, Inc. operates numerous Domino's franchise stores throughout North and South Carolina. Defendant Aaron Fox is an owner, officer, and director of Defendant Goodfella's Pizza, Inc. Plaintiff alleges that Fox exercises centralized ownership, centralized management, centralized control workforce relations, and centralized and interrelated control of operations with regard to all delivery drivers employed by Defendants.

### C. Delivery Drivers Have Similar Job Duties

Defendants employ delivery drivers to deliver pizza and other food items to customers. (Answer, Doc. No. 4 at ¶ 2; Exs. C-D at ¶ 2). Defendants require their delivery drivers to provide their own vehicles and further require that those vehicles are insured and kept in a safe, legally operable condition. (Answer, Doc. No. 4 at ¶¶ 10, 16; Exs. C-D at ¶ 3).

### D. Delivery Drivers Share Common Wage Rates

Defendants pay their delivery drivers sub-minimum wage hourly rates, relying on a tip credit applied according to the time that they perform deliveries. (Compl., Doc. No. 1 at ¶ 1; Exs. C-D at ¶ 2). Because Defendants have only claimed a tip credit up to the bare applicable minimum wage, the practical effect of invoking the tip credit is to standardize all affected employees at the minimum wage rate. Thus, all drivers within the collective have been paid the same nominal wage rate during the recovery period.

### E. Delivery Drivers Incur Similar Vehicle Costs to Perform Their Jobs

Defendants' delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses")

while delivering pizzas and other food items for the benefit of Defendants. (Compl., Doc. No. 1 at ¶ 13; Exs. C-D at ¶ 3).

**F. The Same Reimbursement Policy Applies to All of Defendants' Delivery Drivers**

Defendants do not pay drivers for their actual "out-of-pocket" automobile expenses. Rather, Plaintiffs are commonly paid on a per-mile basis, as little as $.25/mile, and well below the required IRS rate. (Exs. C-D at ¶ 4).

**G. Illustration of Sub-Minimum Wage Rates**

Plaintiff intends to show through collective-wide, expert vehicle costing testimony that Defendants' reimbursement model is fundamentally flawed because Defendants do not reasonably estimate the actual expenses of owning and operating a vehicle for pizza delivery. Plaintiff contends that failure to reimburse means actual wages delivery drivers received "free and clear" fell below minimum wage, thus violating the FLSA.

Named Plaintiff asserts in her motion that Defendants' treatment of her clearly illustrates that minimum wage deficits result from Defendants' low reimbursement rates. Named Plaintiff was effectively reimbursed less than $0.30 per mile for miles driven on Defendants' behalf. (Ex. C at ¶ 4). Similarly, while employed by Defendants, Defendants reimbursed Early Opt-In Plaintiff Mathis as little as $0.25 per mile for miles driven on Defendants' behalf. (Ex. D at ¶ 4). During the relevant time period, the IRS business mileage reimbursement rate ranged between $0.58 and $0.535 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. (http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates).

According to Plaintiff, using the lowest IRS rate per mile driven ($0.535 per mile) in effect during Plaintiff Neira's employment as a reasonable approximation of her automobile expenses, every mile driven on the job decreased her net wages by at least $0.235 ($0.535 –

$0.30) per mile. Thus, Defendants consistently "kicked back" to Plaintiff Colon $0.235 per mile or more, thus placing her hourly wage at a rate far lower than the applicable and local minimum wage. Plaintiff and Opt-In Plaintiffs contend that the reimbursements they received were inadequate to reimburse them for the automobile expenses they incurred delivering food for Defendants. (Exs. C-D at ¶ 4).

**II. LEGAL STANDARD**

The FLSA provides that a plaintiff "may maintain a collective action against [her] employer for violations under the act pursuant to 29 U.S.C. § 216(b)." Quinteros v. Sparkle Cleaning, Inc., 532 F. Supp. 2d 762, 771 (D. Md. 2008). In particular, Section 216 provides:

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). To serve the "broad remedial purpose" of the FLSA, courts are afforded the power to authorize notice to other potential class members of their rights to "opt-in" to a plaintiff's case and form a collective action. Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). These early notices, authorized by the court, are helpful to protect against misleading communications by the parties, resolve disputes regarding the content of any notice, prevent the proliferation of multiple individual lawsuits, assure that the joinder of additional parties is accomplished properly and efficiently, and expedite resolution of the dispute. Id. at 170-72.

In deciding whether an FLSA action may proceed as a collective action, courts in the Fourth Circuit have adopted a two-step inquiry. Adams v. Citicorp Credit Servs., 93 F. Supp. 3d 441, 452-53 (M.D.N.C. 2015). At the initial "notice stage," the Court determines whether

Plaintiff and potential opt-in plaintiffs are "similarly situated" to merit sending notice of the action to possible members of the class. If they are, additional plaintiffs are permitted to "opt-in" to the lawsuit. Id. (quoting Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010)). At the notice stage,

> [p]laintiffs generally need only make a relatively modest factual showing that a common policy, scheme, or plan [that violated the law] exists. To meet this burden and to demonstrate that potential class members are similarly situated, [p]laintiffs must set forth more than vague allegations with meager factual support regarding a common policy to violate the FLSA. Their evidence need not, however, enable the court to determine conclusively whether a class of similarly situated plaintiffs exists, and it need not include evidence that the company has a formal policy of refusing to pay overtime.

Adams, 93 F. Supp. 3d at 453 (quoting Mitchel v. Crosby Corp., 2012 WL 4005535, at **2-3 (D. Md. Sept. 10, 2012)). At this stage of the proceedings, the Court does not resolve factual disputes, make credibility determinations, or decide substantive issues on the merits. Id. at 454. In other words, the standard for conditional certification at the notice stage is a lenient one. Id. at 452-53. The second step of the two-step process usually occurs after discovery has largely been completed and allows a court the opportunity to make a final determination "of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action." Id. (quoting Acevedo, 600 F.3d at 519).

### III. DISCUSSION

The Court finds that Plaintiff has met the lenient standard of demonstrating that Plaintiff and opt-in plaintiffs are similarly situated. Therefore, the Court will grant Plaintiff's motion at this early stage in the proceedings. However, Defendants argue in their response in opposition that the parties have not conferred on the specifics of the Notice to the proposed class. Before this Court approves the Notice, Defendants ask for the parties to be able to meet and confer regarding the proposed Notice. The Court will grant Defendants' request.

**ORDER**

(1) The Motion to Conditionally Certify a Collective Action and Facilitate Notice filed by Plaintiff Megan Marie Neira, individually and on behalf of all others similarly situated, under 29 U.S.C. § 216(b), (Doc. No. 10), is **GRANTED in part** in accordance with the terms of this Order.

(2) Within thirty (30) days of this Order, the parties shall meet and confer regarding Plaintiffs' proposed Notice, and the parties shall submit to the Court an agreed-upon proposed Notice to the proposed class. If the parties cannot agree on the terms, the parties shall submit their own proposed Notices.

Signed: June 6, 2020

*[signature]*

Max O. Cogburn Jr
United States District Judge